IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>KEVIN R. FROST AND SHERRI FROST,<br><br>Defendants. | CV 20–160–M–DLC<br><br><br>ORDER |

Before the Court is Plaintiff Mountain West Farm Bureau Mutual Insurance Company's summary judgment motion. (Doc. 25.) Mountain West asks this Court to enter summary judgment in its favor, holding that there is no coverage, it has no duty to defend, and that it is entitled to seek recoupment of defense costs expended on Defendant Kevin Frost's behalf. (*Id.*) Neither Kevin Frost or Defendant Sherri Frost have opposed this motion. For the reasons stated herein, the Court will grant the motion.

### UNDISPUTED FACTS[1]

This case represents another coverage action stemming from Sherri Frost's

---

[1] The facts outlined in this section are derived largely from Mountain West's Statement of Undisputed Facts. (Doc. 27 at 1.) Neither Kevin Frost or Sherri Frost have filed statements of disputed facts. The failure to do so is "deemed an admission that no material facts are in dispute." L.R. 56.1(d).

1

state court litigation against Kevin Frost ("Underlying Lawsuit"). *See generally Homesite Ins. Co. of the Midwest v. Frost*, 2020 WL 5369847 (D. Mont. 2020); (*see also* Doc. 1-2). The Underlying Lawsuit complains of Kevin Frost's actions on February 9, 2016, when he kidnapped her and forced her into a vehicle. (Docs. 1-2 at 3–8.) Kevin Frost pled guilty to aggravated kidnapping and partner or family member assault in Montana state court following this incident. (Doc. 27 at 9–10.) During his change of plea hearing, he admitted to "purposely and knowingly" grabbing her and physically restraining her inside a vehicle. (*Id.* at 10.)

When the kidnapping occurred, Kevin Frost's parents, George Frost and Marilynn Frost, were insured by a policy issued by Mountain West ("the Policy"). (*Id.* at 1.) Relevant to this case, the Policy provides for liability, automobile, and umbrella coverage. (Doc. 27 at 2–3.) Kevin Frost is not a named insured under the Policy. (*Id.* at 1–3.) Before being served with the Underlying Lawsuit, Kevin Frost tendered the claim to Mountain West. (*Id.* at 10.) Mountain West is currently furnishing a defense against the Underlying Lawsuit under a reservation of rights and has communicated its intent to seek recoupment of defense costs and its belief that the Policy provides no coverage. (*Id.* at 10–14.)

## PROCEDURAL BACKGROUND

Mountain West commenced this action on November 4, 2020, seeking

declaratory judgments that it has no duty to defend or indemnify Kevin Frost and two corporations with respect to Sherri Frost's state court lawsuit. (*See generally* Doc. 1). Mountain West then amended its complaint, dropping the two corporations, and seeking declaratory judgments that it has no duty to defend or indemnify Kevin Frost in the underlying state court lawsuit brought by Sherri Frost and that it may recoup defense costs already expended. (*See generally* Doc. 9.) Sherri Frost, through counsel, and Kevin Frost, pro se, both filed answers denying the merits of Mountain West's claims. (Doc. 10–11.)

Mountain West filed the summary judgment motion at issue on January 17, 2022, seeking a dispositive resolution of this case through declarations that it has no duty to defend or indemnify Kevin Frost from Sherri Frost's state court lawsuit and may recoup defense costs. (Doc. 25.) Important to this case, although Kevin Frost and Sherri Frost have appeared and defended against this lawsuit, neither of them filed any opposition briefing to Mountain West's motion, or as noted above, contested its view of the undisputed facts. The deadline to do so has now long passed. Ultimately, the Court finds the entry of summary judgment proper.

## STANDARD

This Court can resolve an issue summarily if "there is no genuine dispute as to any material fact" and the prevailing party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome

3

of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine when there is sufficient evidence for a reasonable factfinder to return a verdict for the other party. *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As explained below, the Court finds that Mountain West has met its initial burden and Kevin Frost and Sherri Frost have not even attempted to meet theirs. Accordingly, summary judgment will be entered in Mountain West's favor.

## ANALYSIS

The Court will interpret the Policy according to Montana law. *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 420 n.16 (9th Cir. 2011); *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 709 (Mont. 2004). In doing so, it will adhere to the standards previously followed when adjudicating another coverage action related to the Underlying Lawsuit in *Homesite Ins. Co. of the Midwest v. Frost*, 2020 WL 5369847 (D. Mont. 2020). There the Court set out the governing legal framework as follows:

> Interpretation of the Policy presents a question of law resolvable by this Court. *Steadele v. Colony Ins. Co.*, 260 P.3d 145, 149 (Mont. 2011). In doing so, this Court applies general principles of contract law and construes the Policy "strictly against the insurer and in favor of the insured." *Id.* The Policy's terms are interpreted according to "their usual, common sense meaning as viewed from the perspective

4

of a reasonable consumer of insurance products." *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042, 1046 (Mont. 2008).
In examining the reach of a Policy's coverage, the focus rests on "the acts giving rise to the" claim rather than a complaint's "legal theories or conclusory language." *Town of Geraldine v. Montana Mun. Ins. Auth.*, 198 P.3d 796, 800–01 (Mont. 2008); *see also New Hampshire Ins. Grp. v. Strecker*, 798 P.2d 130, 132 (Mont. 1990). Accordingly, mere inclusion of a negligence claim in a complaint is insufficient to pull such claims within the scope of coverage. *Strecker*, 798 P.2d at 132. Likewise, this Court is mindful not to relegate its interpretative task to a singular determination of whether the acts in question were intentional. The Montana Supreme Court has held on multiple occasions that intentional acts may nonetheless constitute an "occurrence" under policy language nearly identical to that at issue here. *See, e.g., Northwest Nat. Cas. Co. v. Phalen*, 597 P.2d 720, 726 (Mont. 1979); *Millers Mut. Ins. Co. v. Strainer*, 663 P.2d 338, 340–42 (Mont. 1983), *abrogated by Sherner v. Conoco, Inc.*, 995 P.2d 990 (Mont. 2000). Thus, whether Mr. Frost's actions were intentional is relevant, but not determinative to this Court's coverage analysis.

Instead, when analyzing whether an action constitutes an "occurrence" within the meaning of personal liability coverage, this Court focuses on whether the acts in question resulted in an "unexpected happening . . . without intention or design on part of the insured." *Safeco Ins. Co. v. Liss*, 16 P.3d 399, 406 (Mont. 2000). This means it is the results of acts, not the acts themselves, that govern whether something is an "occurrence," and thus afforded coverage under a personal liability policy. *Id.* (noting that the intentional "unsafe use or mishandling of firearms are an all too frequent 'occurrence' in" Montana, and nonetheless may remain an "insurable event unless otherwise expressly excluded under an insured's personal liability policy").

Additionally, when an insurance policy contains a personal liability exclusion for acts expected or intended by the insured, Montana law instructs this Court to apply a two-prong test, first inquiring whether the acts in question were intentional before second ascertaining "whether the consequence[s] or resulting harm[s] stemming from the act [were] intended or expected from the actor's standpoint." *Employers Mut. Cas. Co. v. Fisher Builders, Inc.*, 371 P.3d 375, 379

> (Mont. 2016). This second inquiry involves an objective determination, thus preventing claimants from pulling their acts within coverage by simple assertion that the resulting harms of which the victim complains were unexpected. *Id.* 379–80.

*Id.* at *3–4. Applying this framework, the Court concluded in *Homesite* that the Underlying Lawsuit was not covered by a homeowner's policy issued to Kevin Frost. *Id.* at *2–6. It will reach the same conclusion here.

Mountain West raises numerous arguments regarding why the Policy does not cover the Underlying Lawsuit. They can be summarized as follows: (1) there is no "occurrence;" (2) even if there were several exclusions would foreclose coverage; and (3) Kevin Frost is not an "Insured" under the Policy; and (4) the Policy's plain language precludes coverage. (Doc. 26 at 25–42.) The Court need not engage with all of these arguments and has no trouble concluding the Policy does not cover the claims advanced in the Underlying Lawsuit.

As noted above, the Policy provides liability, automobile, and umbrella coverage. (Doc. 27 at 2–3.) These grants of coverage only extend to damages arising from an "occurrence." (Doc. 1-1 at 51, 65, 85.) An "occurrence" is defined, in relevant part, as "an unexpected and unintended accident." (*Id.* at 15–16, 72.) The Court has already found that the Underlying Lawsuit does not complain of an "occurrence," with respect to an insurance policy assigning that term a nearly identical definition to the

6

one described above. *Homesite*, 2020 WL 5369847 at *6. There is no basis for reaching a different result in this case.

Here, as in *Homesite*, the Underlying Lawsuit complains of "precisely the intentional acts which gave rise to the criminal charges for which" Kevin Frost pled guilty. *Id.* at *5. "Nothing about the acts complained of, or the resulting harms to Ms. Frost, were accidental." *Id.* at *6. This forecloses any argument that the Policy provides liability, automobile, and umbrella coverage for the Underlying Lawsuit. Even if it did not, the Intended or Expected loss exclusions for these coverages, (Doc. 1-2 at 55, 67, 88), would foreclose application of the Policy. *Homesite*, 2020 WL 5369847 at *6. The Policy also specifically excludes coverage for punitive damages, (Doc. 1-2 at 56, 68, 90), so there is no coverage for that claim as well. *Homesite*, 2020 WL 5369847 at *5. In short, Mountain West is entitled to summary judgment on its claim that the Policy does not cover the Underlying Lawsuit.

To the extent Mountain West also seek summary judgment on its duty to defend claim, the Court will grant that request as well. *Id.* at *6 (holding that where there is no coverage there is no duty to defend) (internal citations omitted). The only remaining issue is whether Mountain West is entitled to summary judgment on its right to recoup defense costs expended on Kevin Frost's behalf in the Underlying Lawsuit. The Court concludes it is, because

7

it timely reserved its right to seek such recoupment through a reservation of rights letter. *Id.* at *6–7; (*see also* Doc. 27 at 10–11.)

Based on the foregoing, the Court will grant summary judgment in Mountain West's favor. Because resolution of this motion is case dispositive, the Court will order that judgment be entered in Mountain West's favor.

Accordingly, IT IS ORDERED Mountain West's summary judgment motion (Doc. 25) is GRANTED.

IT IS FURTHER ORDERED that the Court DECLARES:

(1)  the Policy does not cover the claims advanced against Kevin Frost in the Underlying Lawsuit;

(2)  Mountain West has no duty to defend Kevin Frost in the Underlying Lawsuit; and

(3)  Mountain West may seek recoupment of defense costs expended on Kevin Frost's behalf with respect to the Underlying Lawsuit.

IT IS FURTHER ORDERED the trial setting and all associated deadlines are VACATED, and any other pending motions are DENIED as moot.

The Clerk of Court is directed to enter judgment in Mountain West's favor by separate document and close the case file.

Dated this 15th day of April, 2022.

_____
Dana L. Christensen, District Judge
United States District Court